112   77
d114   20
112   77
120  280

George D. Harrison v. Hartford Fire Insurance Company, Appellant.

**Arbitration: WHEN REVOCABLE:** *Statute and contract.* Code, section 4390, declaring that neither party can revoke a submission to arbitration, relates only to agreements made under the preceding sections of the act, providing that a judgment might be entered on the award, and does not forbid the revocation of an agreement to arbitrate which did not stipulate for judgment.

**Same:** *Insurance policy.* Where an insurance policy provided for arbitration only on disagreement as to the amount of loss, and also stipulated for the selection of an umpire before appraisement, a contract for arbitration made before disagreement as to loss, and providing for the selection of an umpire only when necessary, not being under the terms of the policy, was revocable.

*Revocation by beginning suit on policy.* Where the parties to an insurance policy, on loss thereunder, made an independent agreement for arbitration, not in pursuance of the stipulation of arbitration in the policy, such agreement was revoked by plaintiff's institution of an action on the policy.

*Waiver of revocation.* Where plaintiff revoked an agreement to arbitrate his loss under an insurance policy by instituting an action on the policy, the revocation was not waived by a subsequent attempt by the parties to proceed under the agreement for appraisement, but not estimating the loss or accomplishing anything by the attempt.

*Appeal from Louisa District Court.*—Hon. W. S. Withrow, Judge.

Monday, October 8, 1900.

Action on an insurance policy. Verdict and judgment for the plaintiff, and the defendant appeals.—*Reversed.*

*McVey & McVey* for appellant.

*D. N. Sprague* and *A. H. Stutsman* for appellee.

Ladd, J.—The policy was issued January 18, 1890, and the insured property destroyed October 4, 1892. On

October 20th of that year the parties entered into a written agreement for the arbitration of the extent of the loss. The appraisers selected made no very determined effort to estimate the damages, failed to choose an umpire, and on the sixteenth day of January, 1893, the plaintiff sued for the indemnity by causing an original notice to be served. The petition was filed ten days later, and the action transferred to the United States circuit court, where, on the twenty-seventh day of January, 1894, a verdict was directed for the defendant on a plea in abatement. 59 Fed. Rep. 732. The plaintiff demanded that on the second day of May, 1894, the parties proceed with the arbitration, but defendant and its appraiser made no response. Another suit was begun in the United States circuit court, May 29, 1894, but, on demurrer, it was held to be barred, and was subsequently dismissed. 67 Fed. Rep. 298. The action now under consideration was commenced July 26, 1894, and on a former hearing was held to be barred by the limitation contained in the policy, requiring suit to be instituted within one year after the loss. 102 Iowa, 112. These decisions rest on the statute as it formerly stood, prohibiting suit within 90 days after service of proofs of loss and the limitation in the policy. No proofs of loss were furnished, but these were undoubtedly waived by the agreement to arbitrate. *Dee & Sons Co. v. Key City Fire Ins. Co.*, 104 Iowa, 173.

It will be observed, then, that the cause of action matured not earlier than January 18, 1893, and, while the first suit was commenced several days too soon, the last was begun more than six months after the twelve months stipulated limitation had expired. Upon reversal, however, by amendments to the pleadings, this question was raised: Did bringing the suit January 16, 1893, amount to an abandonment by the plaintiff of the agreement to arbitrate? If it did not, then that agreement was outstanding, and not repudiated until defendant failed to

proceed upon demand, May 2, 1894, and, as under the policy suit might not be brought until 60 days after an award, the period of limitation had not elapsed when this action was begun. If it did, then the action is barred. The agreement merely provided that each party choose an appraiser, and that these, with a third to be selected by them, estimate in writing the damage occasioned by the fire, and that such an estimate, when so made, be binding on the parties. That naked contracts to arbitrate are revocable by either at any time before an award, and that commencing suit in court has that effect, appears to be well settled. *Kimball v. Gilman,* 60 N. H. 54; *Peters' Adm'r v. Craig,* 6 Dana, 307; *Nurney v. Insurance Co.,* 63 Mich. 633 (30 N. W. Rep. 350, 6 Am. St. Rep. 338); *Paulsen v. Manske,* 126 Ill. 72 (18 N. E. Rep. 275, 9 Am. St. Rep. 532); *Leonard v. House,* 15 Ga. 473; *Snodgrass v. Gavit,* 28 Pa. St. 221; *Assurance Co. v. Hocking,* 115 Pa. St. 407 (8 Atl. Rep. 589, 2 Am. St. Rep. 562). A contrary conclusion was reached in *Knaus v. Jenkins,* 40 N. J. Law, 288 (29 Am. Rep. 237), where the court evidently followed *Sutton v. Tyrrell,* 10 Vt. 91, without noticing the feature of that case distinguishing it from those cited above. There the action was pending, and its entry on the docket and continuance merely was held not to amount to a revocation of its submission to arbitrators. See, also, Morse Arbitration, 236. This stipulation differs from the agreement to arbitrate contemplated by chapter 14 of title 21 of the Code, in that no judgment might be entered thereon, and for this reason the statutory prohibition of revocation has no application. See section 4390, Code. But there is a line of decisions holding that where a submission is part of an agreement, containing other terms to be performed by the parties, especially if those terms have been in part or wholly executed, it is not revocable. *McKenna v. Lyle,* 155 Pa. St. 599 (26 Atl. Rep. 777, 35 Am.

St. Rep. 910); *Guild v. Railroad Co.,* 57 Kan. 70 (45 Pac. Rep. 82, 33 L. R. A. 77.)

This agreement, however, relates to no subject other than arbitration. True, the policy provides for arbitration, but only "in event of disagreement as to the amount of loss," and the record discloses no such disagreement. See *Mentz v. Insurance Co.,* 21 Am. Rep. 80. Again, the policy stipulates for the selection of an umpire before appraisement, while under the contract one is to be chosen only when necessary. These discrepancies are mentioned, not as indicating the invalidity of the agreement, but its independent character as a contract. See *Adams v. Insurance Co.,* 85 Iowa, 6. Indeed, in the original reply, the plaintiff "specifically denies any arbitration was ever attempted or made under or by virtue of the terms of the policy." It is clear that by bringing suit the plaintiff revoked any authority theretofore derived from the agreement of October 20, 1892. In seeking redress through the courts, he unmistakably indicated his purpose not to adjust the loss in any other manner. Shortly after this, plaintiff informed the defendant's agent of his willingness to proceed before the appraisers chosen, but after considerable parley the attempt was abandoned January 25, 1893, without accomplishing anything. Had the loss been estimated, there might be something in the claim that the revocation was waived. See *Seely v. Pelton,* 63 Ill. 101.

All attempt to arbitrate, however, was given up, and the plaintiff, by filing his petition and prosecuting the suit, put beyond question his intention of repudiating the agreement. But if it be conceded that the agreement was merely expressive of the conditions of the policy, as now contended by the appellee, bringing suit waived the right plaintiff had of demanding the appraisement of damages, and this was not restored when the remedy thus sought was exhausted in the federal court. As he had waived the agreement to arbi-

trate, the defendant was under no obligation to proceed thereunder, when requested so to do, May 2, 1894. Otherwise, we have plaintiff demanding in court that which by the express terms of the policy, in event of arbitration, was not payable until 60 days after an award. One ought to be held to have waived such a condition, rather than deemed to be trifling with the court by seeking to enforce an immature claim. The arbitration rather than the suit should go down. Nor is the result, under the circumstances disclosed, affected by any right defendant may have had to arbitration as a condition precedent. By failing to furnish an arbitrator who would proceed with reasonable promptness in the discharge of his duties any right it may have had to insist on the damages being appraised was lost. The record leaves no doubt but that the appraiser chosen by this company resorted to the familiar expedient of preventing or delaying action by demanding an umpire from afar off, and then, when something might be accomplished, finding it impossible to proceed because of pressing business engagements at his home in Kansas City, Mo., there detaining him several months. That the defendant was precluded by such conduct from insisting on arbitration as a condition precedent to the maintenance of the action is well settled by authority. *Read v. Insurance Co.*, 103 Iowa, 314; *Brock v. Insurance Co.*, 102 Mich. 583 (61 N. W. Rep. 67, 26 L. R. A. 623); *Bradshaw v. Insurance Co.*, 137 N. Y. 137 (32 N. E. Rep. 1055); *McCullough v. Insurance Co.*, 113 Mo. 606 (21 S. W. Rep. 207); *Bishop v. Insurance Co.*, 130 N. Y. 488 (29 N. E. Rep. 844); *Uhrig v. Insurance Co.*, 101 N. Y. 362 (4 N. E. Rep. 745).

The assured, by instituting the suit, having elected to treat this conduct as a waiver of arbitration, ought not to be allowed to reconsider such action long after the suit has failed. Both parties had waived arbitration, and it was not in the way of the action of January 16, 1893, or any other within the period of limitation fixed by

the policy. Perhaps it should be added that the record does not bear out the claim that defendant in its answer pleaded the agreement to arbitrate was outstanding. The necessity of arbitration as a condition precedent was averred, and its omission, through plaintiff's fault, alleged by way of a plea in abatement. Even if the positions taken by the parties are somewhat at variance with those originally assumed, nothing has occurred by which either should be estopped. This has resulted largely from experimenting in litigation rather than following well-settled rules.—REVERSED.

GRANGER, C. J., not sitting.